730 March 12, 2025 No. 210

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

OSCAR ZURITA,
*Defendant-Appellant.*

Marion County Circuit Court
20CR35436; A179446

J. Channing Bennett, Judge.

Argued and submitted November 5, 2024.

Ryan Scott argued the cause and filed the brief for appellant.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General and Rebecca M. Auten, Assistant Attorney General.

Before Ortega, Presiding Judge, Hellman, Judge, and Mooney, Senior Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for first-degree sexual penetration, ORS 163.411, and first-degree sexual abuse, ORS 163.427. On appeal, defendant contends that the trial court erred by prohibiting him from cross-examining the victim regarding defendant's pretrial attempts to obtain information about the victim's therapist, and by "failing to strike, give a curative instruction or grant a mistrial" when the prosecutor referenced Bill Cosby and Larry Nassar during closing argument. As explained below, defendant's failure to make an offer of proof prevents us from determining whether the court erred in prohibiting his questions. Further, the court acted within its discretion in concluding that the prosecutor's references were not so prejudicial as to have denied defendant a fair trial. Accordingly, we affirm.

The state charged defendant with sexual abuse and sexual penetration of H, a minor. In disclosing the abuse to law enforcement, H stated that her therapist encouraged her to report the abuse. Defendant sought to subpoena H's counseling records and moved the court to conduct an *in camera* review. H and the state opposed providing them; the state argued that it was not in possession or control of the records, and H argued that the records were privileged. Ultimately, the trial court denied defendant's motion but left open the possibility that defendant could file a motion to compel on that issue. Defendant did not do so.

At trial, defense counsel asked H about the therapist, including asking if H remembered the therapist's name or address. H testified that she did not remember. Defense counsel continued to ask about the therapist before the court interrupted.

"[Defense counsel:]   Did you ever call your counselor on the phone for scheduling purposes?

"[H:]   No.

"[Defense Counsel:]   You just walked in and started having a session?

"[H:]   Through—no.

"[Defense counsel:]   You're aware that I have for a long time been asking you for—

"The Court:   Step forward.

(Sidebar:)

"*****

"[Defense counsel:]   Oh, she's testified that she has a counselor and she is not going and she has no idea who it is, I'm entitled to explore the issues of [who it] is and where it is, she's going.

"*****

"[Defense counsel:]   I've asked her to bring her, then I'm going to have to make an offer of proof.

"The Court:   Well, that's fine and we'll do it off the record another time, I'm denying any of that (unintelligible) in the interim (unintelligible) rules, you're not entitled to this, there is no basis for you challenge her or intrude upon her (unintelligible) and I can't find a single case that allows (unintelligible) you don't get (unintelligible) find a case (unintelligible).

"[Defense counsel:]   Okay, and then I'll—we'll make an offer of proof and I'm not right now I'm not asking for her records, I'm talking about the foundational history of how we got here and me asking for the name of her counselor previously and she can say I didn't want to—this is the first time, she could have said I don't remember, she said I don't remember his name, she could have, and she doesn't even know where he's at, I'm not asking for the records right now."

Defense counsel did not ask further questions about the therapist. Soon after the above discussion, the court told defense counsel, "if you want to make an offer of proof on the issue we discussed at sidebar, I'm certainly going to allow you to do that." Defendant never did so.

On appeal, defendant argues that the court erred by prohibiting him from asking about his pretrial efforts to obtain information about H's therapist. He contends that evidence of H's motivation to keep her therapist a secret was relevant to her credibility because, if identified, the therapist may have rebutted an important part of her testimony.

On this record, even if we assumed that the court erred by prohibiting defendant's question, defendant's failure to make an offer of proof prevents us from determining whether such an error was reversible error. *See State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988) ("Normally, an offer of proof is required to preserve error when a trial court excludes testimony * * * to assure that appellate courts are able to determine whether it was error to exclude the evidence and whether any error was likely to have affected the result of the case."). Here, despite defense counsel's stated intent to make an offer of proof, he never stated for the record what questions he intended to ask and, more importantly, how any answers to his questions would have been helpful to the defense. Absent that information, we cannot determine whether any error "was likely to have affected the result of the case so as to constitute prejudicial error." *State v. Krieger*, 291 Or App 450, 455, 422 P3d 300, *rev den*, 363 Or 599 (2018); *see also State v. Powers*, 323 Or App 553, 569, 523 P3d 1112 (2023), *rev allowed*, 372 Or 812 (2024) (explaining that absent an offer of proof, we cannot speculate as to what the excluded testimony would have been).

Defendant next contends that the court erred by "failing to strike, give a curative instruction or grant a mistrial" when the prosecutor referenced Bill Cosby and Larry Nassar in her closing rebuttal argument:

> "Now, several witnesses, and including Mr. Martinez that testified this morning, have talked about how the defendant's a good guy. Good guy. Well, I think we can all use our own personal experiences that we have seen people act one way one—with some group of people, one way with another group of people, one way they be out in the open, a different way. Think about a person that you know maybe that they're an introverted person, so when they're out and about they are quiet, reserved, don't like to reach out to people, but when they're in front of their family, they're with a group of friends that they really, they might be boisterous, they might have fun, they might have, just because you have one way with one person doesn't necessarily mean you're always a good person no matter what, think about it. Until a few years ago, I bet a lot of people thought Bill Cosby was a great guy. I think that's changed.

"* * * * *

    "We talked in jury selection about a documentary called 'Athlete A' about Larry Nassar, and I asked one of the panelists about it and, if you recall, the person who has been convicted of sexually abusing over I don't know what the total convictions are, but purported over 160 women he's abused during the course of his career as a team doctor of US gymnastics, we have seen those people, those athletes compete at the highest level, watch them on TV representing our country and, guess what, celebrating their wins, jumping up and down, having fun, in a room was feet away? Larry Nassar. There is no right way to act as a sexual abuse—or someone who's been sexually abused, there's no wrong way, everybody is different and [H] came in here and told you why she acted."

Defendant did not object to the statements at the time, but after the state finished its closing argument and the court excused the jury, defense counsel "put on the record a concern and objection" to the prosecutor's references to Bill Cosby and Larry Nassar, arguing that they "appeal[ed] to the jurors' passion or prejudice" and were based on evidence outside of the record. The trial court overruled the objection.

    We first observe that it is not clear that defendant adequately preserved his argument on appeal that the trial court erred by "failing to strike, give a curative instruction or grant a mistrial." The timing of defendant's objection would have made it challenging for the trial court to strike or provide a curative instruction, and the objection itself was a general one that failed to provide the court with clarity as to what remedy defendant was requesting. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (holding that "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted").

    But even if defendant's objection sufficiently preserved his argument, we are not persuaded that the court abused its discretion in overruling defendant's objection. *See State v. Mayo*, 303 Or App 525, 530, 465 P3d 267 (2020) (applying abuse of discretion standard to a trial court's

decision to overrule an objection to closing arguments). The prosecutor's reference to Larry Nassar was in the context of a documentary discussed during *voir dire* and the various ways victims of sexual assault act in the presence of their abusers. The reference to Bill Cosby was in response to testimony that defendant was a "good guy" and used as an example to illustrate that people may act differently based on who is around. Further, the court explained to the jury when it returned that the "lawyers' statements and arguments are not evidence" and instructed the jurors to "weigh the evidence calmly and dispassionately and to decide this case on its merits." Under those circumstances, the trial court acted within its discretion in concluding that the prosecutor's references were not so prejudicial as to have denied defendant a fair trial. *State v. Davis*, 345 Or 551, 583, 201 P3d 185 (2008), *cert den*, 558 US 873 (2009).

Affirmed.